[Cite as *Chumlea v. Chumlea*, 2015-Ohio-4197.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| WILLIAM C. CHUMLEA | : | |
| Plaintiff-Appellee | : | |
| | : | Appellate Case No. 2014-CA-75 |
| v. | : | |
| | : | Trial Court Case No. 2004-DR-439 |
| CHARLOTTE E. CHUMLEA | : | |
|     Defendant-Appellant | : | (Civil Appeal from |
| | : |   Common Pleas Court) |
| and | : | |
| | : | |
| MICHELE CHUMLEA | : | |
|     Third-Party Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of October, 2015.

. . . . . . . . . . .

DAVID M. MARTIN, Atty. Reg. No. 006623, 4 West Main Street, Suite 707, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee, William C. Chumlea

JAMES R. KIRKLAND, Atty. Reg. No. 009731, 130 West Second Street, Suite 840, Dayton, Ohio 45402
    Attorney for Third-Party Defendant-Appellee, Michele Chumlea

JAMES A. ALEXANDER, Atty. Reg. No. VA 88223, 1130 George James Loop, Radiant, Virginia 22732
and
STEVEN MAGAS, Atty. Reg. No. 0009131, 7733 Beechmont Avenue, Suite 210, Cincinnati, Ohio 45255
    Attorneys for Defendant-Appellant, Charlotte C. Chumlea

JOHN J. DANISH, Atty. Reg. No. 0046639, 30 East Broad Street, 17th Floor, Columbus,

Ohio 43215

     Attorney for Defendant-Appellee, State Teachers Retirement System of Ohio

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Charlotte Elizabeth Chumlea appeals from the trial court's June 11, 2014 post-divorce entry overruling her February 3, 2014 "Motion for Issuance of Revised Division of Property Order and for Other Relief."

{¶ 2} Charlotte advances two assignments of error. First, she contends the trial court "erred in failing to address and declare appellant's monthly dollar share of the State Teacher's Retirement System benefits for retirement and survivorship prior to the final STRS approval of the retirement application." Second, she claims the trial court "erred in releasing STRS from the restraining order to complete the retirement process before the court awarded the full dollar amount of appellant's monthly benefits for retirement and survivorship." The essence of Charlotte's argument is that the trial court should have filed a revised division of property order (DOPO) setting forth her benefits in a specific dollar amount (rather than a coverture fraction) unreduced by any effect of appellee William Chumlea's remarriage *before* STRS finalized its approval of his retirement paperwork.

{¶ 3} The record reflects that Charlotte and William divorced in March 2007 following a 33-year marriage. As relevant here, the March 21, 2007 divorce decree awarded Charlotte one-half of William's STRS pension benefits accrued during the marriage. Because William had not yet retired at the time of the divorce, the decree applied a traditional coverture-fraction formula, providing:

     * * * Defendant, Charlotte Chumlea, shall be awarded one-half of all retirement benefits of the Plaintiff, William Chumlea, through STRS, which

accrued between the date of the parties' marriage on August 25, 1973 and December 19, 2006 (the last day of testimony in this case) with the specific amount to be determined at such time as when Dr. Chumlea retires or begins receiving his pension benefits, with the value of this asset to be determined by computing the ratio of the number of years of employment of Dr. Chumlea during the marriage (between August 25, 1973 and December 19, 2006) to the total years of his employment, with Ms. Chumlea to be awarded one-half of the calculated amount resulting therefrom, with the specific stipulation that Ms. Chumlea will also be entitled to all survivor benefits and any cost of living increases available through Dr. Chumlea's retirement plan, with the cost of the survivor's benefits to be equally assessed to the parties.

(Doc. #64 at 28-29).

{¶ 4} On August 16, 2007, the trial court filed a nunc pro tunc entry in which it revisited the issue of retirement benefits. The trial court modified the divorce decree "to give effect to the intent of the Court in rendering its decision" as follows:

* * * The Plaintiff ("Participant") shall elect his benefits in the form of a reduced joint and survivor annuity that will provide the Defendant (former spouse) with a survivor benefit to the extent of her assigned interest based on the coverture formula set forth above. The employee must elect either Option 3 or 4 as defined in 3307.60 ORC.

If the multiple beneficiary option is chosen, the Court specifically retains jurisdiction to insure that the Defendant's (former spouse's) portion

is not unfairly reduced due to the Plaintiff's (participant's) election of a second, third, or fourth beneficiary. If the Plaintiff elects several beneficiaries or one which is much younger the reduction in benefits could be significant and reduce the Defendant's (former spouse's) share. If that occurs, calculations must be made to determine the appropriate reduction that accounts for only the Defendant's (former spouse's) survivor benefits and this will be assigned as a dollar amount in a revised Division of Property Order.

The purpose of this order relative to the joint and survivor election is to insure that the Defendant (former spouse) receives an undiminished level of monthly income upon the death of the Plaintiff (participant).

The Plaintiff shall take all necessary steps to elect the Defendant (former spouse) as the designated beneficiary for purposes of establishing and sustaining the surviving spouse coverage for the Defendant (former spouse) as set forth above.

(Doc. #75 at 1-2).

{¶ 5} Less than one month after the foregoing nunc pro tunc entry, William married his current wife, Michele Chumlea. Thereafter, the trial court filed a second nunc pro tunc entry on April 22, 2008. It states:

To clarify this Court's prior orders awarding the Defendant survivorship rights in the Plaintiff's State Teachers Retirement System Retirement Plan, the Court makes the following supplemental order:

Upon the Participant's retirement under the Plan, the Participant

shall elect a joint and survivor annuity with Charlotte Chumlea named as the beneficiary. The joint and survivor percentage that is to be elected by the Participant and provided to the beneficiary shall be equal to 50% times a fraction where the numerator is 27.44 (which is the number of years of service credit earned by the Participant while both a member of the Plan and married to the Alternate Payee) and the denominator is the Participant's total number of years of service credit with the Plan at the time of his retirement.

(Doc. #103 at 1).

{¶ 6} Neither party appealed from the divorce decree or the nunc pro tunc entries. William submitted paperwork to retire effective July 1, 2014. He named both Charlotte and his current wife, Michele, as beneficiaries. As required by the August 16, 2007 nunc pro tunc entry, he selected benefits under "Option 4," which provides survivor benefits for multiple beneficiaries. *See* R.C. 3307.60(A)(4). STRS established his retirement account and acknowledged its receipt of an August 2007 division of property order that had been prepared by Charlotte's counsel using the coverture formula set forth in both the divorce decree and the April 22, 2008 nunc pro tunc entry.

{¶ 7} On February 3, 2014, Charlotte filed a motion in the trial court seeking, among other things, a revised division of property order setting forth her benefits as a specific dollar amount rather than as a coverture fraction. (Doc. #295). She further requested that this dollar amount not be reduced due to William's marriage to Michele. Charlotte feared this would happen because of actuarial adjustments that occur when benefits must be paid for the duration of multiple beneficiaries' lives. STRS ultimately sent

counsel for William and Charlotte a May 9, 2014 letter opining that William had complied with the April 22, 2008 nunc pro tunc entry. In relevant part, the letter stated:

On the service retirement application submitted by Dr. Chumlea, he elected a joint and survivor annuity, and he named Charlotte Chumlea as a beneficiary of 39.5 % of his retirement benefit. STRS believes that Dr. Chumlea calculated the amount for Charlotte using 28.44 years as the numerator (28.44 years / 36 total years of service credit x 50% = 39.5%). Because that amount is even greater than the amount Dr. Chumlea was ordered to provide to Charlotte in the April 22, 2008 Nunc Pro Tunc Entry (27.44 years of marriage / 36 total years of service credit x 50% = 38.11%), STRS determined that Dr. Chumlea complied with the order.

STRS retained a division of property order issued by the court on August 17, 2007, and as required by Section 3307.371 of the Ohio Revised Code, notified the clerk of courts and the parties that STRS retained the division of property order and would comply with the order when the participant received payment. Once STRS has processed and finalized Dr. Chumlea's application for service retirement benefits, STRS will calculate and issue payment to Charlotte as alternate payee in accordance with the division of property order * * *.

(Exh. G to STRS 7/16/2014 opposition to motion for stay).

{¶ 8} After conducting a May 9, 2014 evidentiary hearing, the trial court overruled Charlotte's motion for a revised division of property order. In its ruling, the trial court found Charlotte's concerns speculative, reasoning:

At this point in time, this Court has insufficient evidence before it to suggest how many beneficiaries, if any, Dr. Chumlea intends to designate when he retires or whether he intends to exercise a "PLOP" option. Therefore, this Court has no way of determining, at this moment in time, if, in fact, Charlotte Chumlea is likely to receive any less benefits than she otherwise might. * * *

At this point in time, this Court has not been provided with sufficient evidence to determine if there is a sufficient basis for Charlotte Chumlea's expressed concern, considering the fact that Dr. Chumlea has not yet selected his retirement options. After all, theoretically, Michele Chumlea or Dr. Chumlea himself could die before Dr. Chumlea's retirement or she could waive her right to his retirement benefits as his current spouse. Similarly, Dr. Chumlea could change his mind and choose not to retire on July 1, 2014. These are future issues which may well serve to impact Charlotte Chumlea's awarded retirement entitlements, however, they are beyond this Court's control and, as such, Charlotte Chumlea is in essence asking this Court to assume facts that may not be necessarily in place when and if Dr. Chumlea retires in a few weeks.

(Doc. #317 at 7).

{¶ 9} In her first assignment of error, Charlotte contends the trial court erred in failing to set forth her benefits in a dollar amount rather than a coverture fraction prior to STRS' final approval of William's retirement application. She argues that the record made

clear how many beneficiaries William had selected, when he planned to retire, and which retirement option he had selected. Charlotte claims the trial court's "theoretical speculation" was unwarranted and did not justify denying her motion. She further asserts that the trial court's refusal to address the central issue in her motion—i.e., her entitlement to have her benefits expressed in a dollar figure that was unreduced by William's remarriage—prejudiced her because STRS' approval of William's application is now final and by statue cannot be changed. For this reason, Charlotte asserts in her second assignment of error that the trial court erred in releasing STRS from a restraining order that had prevented the agency from finalizing William's retirement application. She argues again that the trial court should have awarded her benefits expressed in a dollar amount that was unreduced by William's remarriage *prior to* STRS' final approval of William's application.

{¶ 10} Upon review, we are unpersuaded by Charlotte's arguments. As a preliminary matter, Charlotte's own appellate brief indicates that the present appeal is moot with respect to the issue of benefits. Charlotte concedes that following the trial court's ruling, STRS finalized its approval of William's application. (Appellant's brief at 4). She then unsuccessfully sought a writ of prohibition and a stay from this court. (*Id.*). By Charlotte's own admission, the end result is that William's retirement plan became final on August 15, 2014 and no changes can be made to the benefits that are being paid under it. (*Id.* at 10-11). Therefore, even if we accept Charlotte's argument that the trial court had enough evidence before it to rule on the issue raised in her motion, Charlotte's own written argument concedes that we cannot now provide the primary relief she requested in her motion, to wit: an order stating her share of benefits in an exact dollar

amount that is not reduced by the effect of William's remarriage or his multiple beneficiary election.

{¶ 11} At oral argument, when questioned about the potential finality of the STRS retirement elections, counsel for appellant directed us to R.C. 3307.60(H)(1)(d) and R.C. 3307.60(H)(2)(a) and (b) as possible statutory authority for court implementation of a change in the finalized plan. We disagree. Subsection (H)(1) indicates that if a pension application does not elect a particular plan, then it is presumed that Option 3 with a 50 percent spousal survivor annuity is selected, with certain exceptions (some of which are elections of a greater spousal benefit). One of the exceptions applies if there is a court-ordered DOPO. Subsection (d), the exception argued by counsel, allows the board to deviate from the standard 50 percent survivor annuity for "[a]ny reason specified by the board." In our view, that subsection does not address *retroactive* modification of a pension after the elections have been made, and accepted, and the plan has been finalized.

{¶ 12} The other provision, R.C. 3307.60(H)(2), says that if a retirant is subject to a DOPO, the board will only accept the retirant's election of a plan if that selection both (a) complies with the DOPO and (b) if the retirant is married (which William was at retirement), "the retirant elects 'option 4' and designates the retirant's current spouse as a beneficiary under that plan unless that spouse consents in writing * * * or the board waives the * * * current spouse consent." We determine that this subsection too says nothing about *retroactive* modification of a finalized pension. Moreover, our reading of this subsection means William had no choice but to have selected Option 4, *and* to have named his new spouse as co-beneficiary absent her consent not to be named a

beneficiary. His new wife, not a party to the divorce, had no legal requirement to consent. This subsection section therefore supports William's election of Option 4 with his current spouse as a co-beneficiary. We do not suggest that we, or the trial court, is without inherent authority to cause the enforcement of a court order. But given Charlotte's own argument that we cannot alter the pension in this case, we confine the remainder of our analysis to the issue of whether the existing court entries required a specific dollar amount for Charlotte rather than a traditional coverture fraction, recognizing that the only available avenue of relief at this point would be something other than a modified DOPO.

{¶ 13} We are unconvinced that Charlotte was entitled to have her benefits expressed in a specific dollar amount. As set forth above, the divorce decree itself provided for Charlotte's benefits to be expressed using the traditional coverture formula. Thereafter, the first nunc pro tunc entry contradicted the decree and expressed concern that if William retired with a multiple beneficiary option, the gross amount of his monthly payout could be lowered (because of the actuarial computation of the cumulative survival period for multiple beneficiaries). Reduction of the gross available monthly benefit then would lower Charlotte's benefit when her percentage is applied to the gross. However, the second nunc pro tunc entry, again a contradiction, explicitly provided:

> Upon the Participant's retirement under the Plan, the Participant shall elect a joint and survivor annuity with Charlotte Chumlea named as the beneficiary. The joint and survivor percentage that is to be elected by the Participant and provided to the beneficiary shall be equal to 50% times a fraction where the numerator is 27.44 (which is the number of years of service credit earned by the Participant while both a member of the Plan and married to the Alternate Payee) and the

denominator is the Participant's total number of years of service credit with the Plan at the time of his retirement.

(Doc. #103 at 1).

{¶ 14} William complied with the foregoing requirement, which also was contained in an August 2007 division of property order that had been prepared by Charlotte's own counsel using the coverture formula. (Doc. #78). He also complied with R.C. 3307.60(H)(2)(b) by naming his current wife as another beneficiary.

{¶ 15} Finally, the trial court itself recognized that any reduction in Charlotte's benefits attributable to William's remarriage may be accounted for in other ways. In the June 11, 2014 entry from which Charlotte has appealed, the trial court stated:

> The Court also notes that Dr. Chumlea has requested a reduction of his spousal support obligation and a hearing is scheduled on that issue on August 7, 2014. At that point in time, it is likely that this Court will have sufficient evidence before it to determine if Charlotte Chumlea's awarded retirement benefits are adversely affected by Dr. Chumlea's selection of retirement options. That issue may well come into play concerning the spousal support issue for which this Court retained jurisdiction concerning *both* the amount and term of spousal support.

(Doc. #317 at 7).

{¶ 16} Charlotte's benefit also could have been different if William had retired sooner, or later, or had not retired at all, or if the benefit formula had been amended. Indeed, because of the unique STRS pension formula, which substantially increases a pension payout if the retirement is with 35 or more years of service credit, the pension,

and Charlotte's portion thereof, would have been markedly less if William had retired just two years earlier. Our point is that the eventual division is virtually always subject to some future uncertainty.

**{¶ 17}** Although our record does not reveal the outcome of the spousal support issue, and we express no opinion on it, we do note that an award of spousal support may be a way of compensating Charlotte if the trial court ultimately finds that William's remarriage inequitably affected her STRS benefits. In her reply brief, Charlotte also suggests the imposition of a constructive trust, life insurance, or an asset transfer to compensate her for any benefit loss attributable to William's remarriage. We need not address such potential remedies at this time, however, because Charlotte did not request them in her February 3, 2014 motion that is the subject of this appeal.

**{¶ 18}** Based on the reasoning set forth above, Charlotte's assignments of error are overruled, and the trial court's June 11, 2014 entry overruling her February 3, 2014 motion for a revised division of property order is affirmed.

. . . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.

Copies mailed to:

David M. Martin
James R. Kirkland
James A. Alexander
Steven M. Magas
John J. Danish
Hon. Thomas J. Capper